Good morning, please be seated. Okay, our second case this morning is a consolidated matter. It is Kraft v. Arcola Township. The case numbers are 4-15-0028, 4-15-0029, 4-15-0030, and 4-15-0255 for the appellant Yasmeen Bey. Did I get it close, Elise? You did, yes. Lucky. And for the appellant Mark Petty. You may proceed. May it please the court, my name is Yasmeen Bey, and I represent the plaintiff, appellant John Kraft, in this case. This case, as you know, is concerning the Illinois Freedom of Information Act and the Arcola Township's failure to provide the requested documentation, which in turn has deprived Mr. Kraft of his right as a taxpaying citizen to complete access and the information concerning the affairs of government. And as you all know, this case involves multiple Freedom of Information Act FOIA requests. Mr. Kraft sent two FOIA requests via email on or about April 23, 2013, to which Mr. Kraft received an incomplete response. He then sent additional FOIA requests on April 12, 2014, April 25, 2014, and May 4, 2014. And these are all the cases that have been consolidated. The attorney for the Arcola Township then, for those three FOIA requests, provided the documents to Mr. Kraft's attorney, who did not represent him in those matters. In fact, those matters had not yet made it to the trial court, and there was no attorney. So essentially what happened was Mr. Kraft sent three FOIA requests, and an individual who should not have been sending the responses sent the responses to an individual who should not have been receiving the responses. On December 16, 2014, the trial court heard all the cases and granted the defendant's motion for directed verdicts. So today I'd like to discuss the two sets of FOIA requests separately with the court. First, I'd like to discuss the two April 2013 FOIA requests and how the trial court erred in granting the defendant's motion for directed verdicts, and how the trial court erred in refusing to admit the Exhibits 1, 2, and 3, and the trial court also erred in refusing to grant the request for the index of records. Then afterwards, I'd like to discuss the three additional FOIA requests sent in April and May of 2014, and how the trial court erred in granting the defendant's motion for directed verdict on those matters, and how they failed to find that the defendant had in fact violated the Freedom of Information Act. So, onto the two FOIA requests that were sent out in April 2013. The trial court did erroneously grant a directed verdict, even after weighing the evidence, considering the credibility of the witnesses, and the weight and quality of the evidence. When this case was presented to the trial court, Mr. Kraft attempted to show that the defendant had not complied with his FOIA requests by offering a couple things. The first was an April 30, 2013 letter from the defendant, which actually in testimony was admitted to by Mr. Cone, who is the Arcola Township Clerk, that it was a copy of the letter he sent. And it was sent from him, the Arcola Township Clerk, to Mr. Kraft, and it contained an incomplete response, including things like compensation packages for township employees, contact information, Verizon wireless invoices, consolidated communications invoices, and other things. Second, Mr. Kraft tried to have Admitted Exhibit 2, which was an actual pleading, filed within the same case by the defendant, I believe filed on February 3, 2014, and it was entitled, Defendant's Own Pleading, Amended Affidavit in Support of Motion for Involuntary Dismissal. And it actually included all the documents in that April 30th letter. So that April 30th letter was a letter with responsive documents, and the second exhibit, the amended affidavit, was only the documents. And these were all documents provided supposedly in response to the two lawyer requests. The pleading itself was notarized and signed by office manager for Arcola Township, her name is Deanna Shields, and stated, quote, the actual response to the request under the Freedom of Information Act is attached here to an incorporated hearing. So essentially giving the court a copy of the responsive documents that it provided to Mr. Kraft. And one of the reasons that Mr. Kraft was wanting to introduce these two pieces of evidence, one of them the letter, one of them the affidavit with the responses, and the letter also including the responses, was to show the court that some of the responsive documents on their face sort of showed that they weren't complying with the FOIA requests as they should have been, and that perhaps additional documentation was available to them. So for example, some of the documents, let's say if it was an invoice or a bill, they would have been marked at the bottom, page one of two, or page one of four, and then the responses just went on to the next item. It didn't include page two or page three or page four. Counsel, if I could stop you there for a second. Let's go to exhibit number one. Didn't the court say that the document was not authenticated, and that was the reason why it wasn't admitted? And what is your argument with regard to that court ruling? Well, for authentication, the court would need evidence sufficient to support that it is what the proponent claims it to be, and they testified to their signatures, Mr. Combe and Ms. Shields, who are the clerk and the office manager respectively, testified to their signatures on the letter that was sent out in April. So authentication should not have been an issue to the trial court at that point. And in fact, my briefs show that there were numerous reasons why they should have been admitted. Authentication, as you say, sir, and also the best evidence. Didn't Shields say that she could not tell whether the document given to her to examine during her testimony was what she sent? Didn't she say, I can't tell if that's what I sent? She may have said that, but she also said that that was her signature on there. And she didn't say there was nothing to show that it had changed or anything like that. The signature was on the second page, correct? I believe so. Additionally, beginning the analysis with the best evidence rule, saying that the writing may be proven by the original writing, except as otherwise provided in the rules, then utilizing Rule 1004, which would serve as exceptions. But in this case, we already satisfied that when we talked about party admissions. The documents should have been allowed because they were proved, again, by the written admission of the defendants. And that's particular to Exhibit 2, which was actually a pleading that they filed in that case. So it was a party admission. It was sent to the same courthouse. It was their own document that they filed, and as such was a party admission. Was that argued to the trial court? Yes. That was a party admission? Yes, that it was the defendants' own pleading that was notarized by, again, Office Manager for the Arcola Township Office, Dena Shields, with her signature, notarized saying, quote, the actual response to the request under the Freedom of Information Act is attached hereto and incorporated herein. And they attached the documentation that they provided, calling it the response to Mr. Kraft's FOIA request. Additionally, in terms of duplicates, duplicates are admissible unless there's a genuine question as to the authenticity of the original. Or in the circumstances, it would be unfair to admit the duplicate in lieu of the original. Mr. Kraft testified that they were true copies. There was no claim by the defendant of suspicion or forgery or alteration, like I said. We reviewed authentication. Mr. Kraft additionally tried to introduce a third piece of evidence, namely responsive documents to a completely separate December 2014 FOIA request. And this is something that the trial court seemed to have a big issue with, and I don't know why. They seemed to have an issue because it was separate. So at that point in time, we had discussed two Freedom of Information Act requests. And those were what were up for the trial court, whether or not the defendant complied with those. Now, we offered in Exhibit 3 a different, a completely separate FOIA request. It wasn't the same as the FOIA requests that were up for that case, but they were FOIA requests. And the trial court seemed to think that because it was a completely separate FOIA request that it wouldn't be relevant. But the reason we offered it is to show that those documents that were provided in the response to Exhibit 3 showed, as I said earlier, the page 2, 3, and 4 of certain types of bills for which the defendant did not provide complete documentation to Mr. Kraft's original FOIA request. So, for example, in the two original ones, he asked for particular documentation. They provided responses that were marked page 1 of 2 or page 1 of 4 and didn't provide pages 2, 3, and 4. In this separate FOIA request that we wanted to admit as Exhibit 3, they showed additional pages. So it was to show the court that it was probable that defendants had access to more documentation than they were actually providing. And it showed that perhaps they, for whatever reason, whether they were hiding the documentation when Mr. Kraft sent in the original FOIA request the first couple times, whether there was mismanagement of the documents in the office, whether there was a mistake, whether there was a clerical error, whether they were doing it on purpose, it showed that there was more documentation that they should have provided that they didn't. Was Exhibit 3 included in the record on appeal? It wasn't included in the record on appeal, and it's something that we didn't realize would have happened. We tried to have all three admitted, and for whatever reason, trial court only, when they created the record, they only provided Exhibits 1 and 2. But had they, and I believe they should have admitted and utilized Exhibit 3 when we were up in December 2014, I believe, and had they admitted it and utilized it for its relevance and to show that the defendants had not complied with FOIA originally as they should have, this wouldn't have been an issue. Because I think that Exhibit 3 was extremely important. Like I said, it showed what was available to the defendants and what they did not provide when they should have. In regards to the three FOIA requests in 2014, April 12, April 25, and May 4, I believe, which were the three other cases before the trial court and which were then consolidated into this case, our main issue is that the three FOIA requests were sent to the wrong individual and were sent by the wrong individual. FOIA clearly outlines who is supposed to be sending FOIA responses to requests and to whom they're supposed to be sending FOIA responses. And neither of those things, those particular FOIA requests, were in line with the Freedom of Information Act. And the attorney for the defendant even said that he sent the documents to a party other than the requester. And the attorney for the defendant is the individual who sent the documents, even though he was not qualified under the statute. And the trial court, for whatever reason, failed to take the requirements of the actual act into consideration. And for those reasons, we're asking the appellate court to reverse the findings of the trial court and remand it back for further discussion. Counsel, would you acknowledge, as to the last three, the 314 MRs, that there was no evidence presented to the trial court? I believe Mr. Kraft gave testimony or let the trial court know that he simply did not receive documents from the defendant. And so, if you don't receive documents from the defendant, there's really nothing to show. But he told the court that he didn't receive anything from the defendant. Was that evidence or just argument? I'm sorry? Was that evidence or just argument? I know the court was on notice from him that he sent FOIA requests, he should have received documents back for three different requests, he didn't receive anything back directly from the defendant, which is how it should have been. And that on its own should have told the trial court, listen, the defendants have these documents, I don't know what kind of games they're playing, they're using the wrong person to send responsive documents out, they're sending them to the wrong people, they're giving everyone the run around. And Mr. Kraft is not, I mean, he's just an ordinary citizen who's trying to get government documentation from the defendant. Didn't they send them to you? I'm sorry? Didn't they send the documents to you? They did, they sent them to my office. So can't you just give them to Mr. Kraft? Yes, and they were given to Mr. Kraft, but the problem is my office didn't send the request. Were they aware you were representing him? We were representing him in another case, but we didn't have anything to do with those particular FOIA requests. We didn't even know that, I mean, Mr. Kraft is his own individual, and we represent him on matters that he hires us to represent him on. If he's sending requests to different places, we have no knowledge of that. And for all anyone knew, he could have had us working on a particular case for him, and it could have been a breach of privacy that the defendant is sending documentation to us, now we know what request Mr. Kraft is sending out when he didn't tell us. Well, are FOIA requests public? They're public, but... And the response is public documents, so how could it be a breach of privacy? Well, he hadn't hired our office for it. It forced us to be in communication with him on it. And who's to say, I mean, just because we were representing him on a different FOIA request, or other FOIA requests, doesn't mean that he, I mean, he hadn't hired our office. So essentially it was creating, for no good reason, creating work for a separate entity to communicate with the requester on something that they hadn't agreed to do in the first place. And like I said, our office didn't even know, I mean, our office didn't even know that Mr. Kraft had been sending those requests until we received the responses. So, I mean, where's the line? Who's to say maybe we represent him on another matter, maybe we represent him on a civil matter, maybe we represent him on a criminal matter, I mean, maybe we represent him in another FOIA case that has... My guess is if you were representing him in a civil matter, they wouldn't be sending you his FOIA request response. They must have known you were representing him in a FOIA matter. Yes, and we were representing him in a FOIA matter. So this seems like a simple misunderstanding that they thought you were representing him and they sent you the documents, but then you get into a big federal case over it. Well, when we were representing him on the other FOIA request, not when he sent the request. So on his own, he sent FOIA requests to the defendant. They complied, allegedly complied. He says they didn't comply. When it was time to take it to trial court, then he hired our office for the other FOIA cases. And so we didn't even represent him when he was sending the original request for the other cases in the first place. So there is no reason to think that we need to represent him simply on a request. We were only representing him as it pertained to going to the trial court, not as it pertained to sending an email or sending a letter and then providing responsive documentation back. I mean, it's not something in... There's nothing in FOIA, the act itself that says if an attorney represents you on a separate FOIA case that's made it to the trial court that all of a sudden... I recognize that. It's just clear that they made a mistake. Well, and to be fair, it might not have been a mistake. It might have been something where they were trying to utilize, you know, send it somewhere else, take a longer time to respond, kind of give him the runaround. Maybe they were getting fed up with... Maybe they didn't want him to continue to send FOIA requests, which is the right of all citizens. They should be able to send FOIA requests and easily, efficiently, and simply receive the responses back. And so if they're wanting to send it somewhere else and do something else, then maybe they're trying to deter him from sending FOIA requests later on, which would be against the purpose of the statute, in my opinion.  Thank you. And we'll have rebuttal. And Mr. Petty. Thank you, Your Honor. May it please the court, counsel. I'd like to address from the beginning the issue that counsel has brought up about Exhibit 3. She has argued to this court about what Exhibit 3 contains. That is totally improper. This court has ruled that Exhibit 3 is not in this case. Counsel attempted to file an affidavit with her brief and include a copy of the exhibit. This court ruled... And then she filed a motion with this court asking the court to expand the record to include Exhibit 3. This court denied that motion. There is no Exhibit 3 in this record. And for her to come here and argue to this court about what Exhibit 3 contained in this case and how it affected this case is totally inappropriate. There is no record. There is no Exhibit 3. This court has ruled that her attempt to include Exhibit 3 and to file an affidavit with her brief is totally inappropriate. And that is the hinge of her argument, one of her arguments, about how Exhibit 3 should have affected the trial judge's decision in this case. With respect to the last issue, I'll take that first. If the Freedom of Information Act requires that, as counsel says in her reply brief, that it's not about whether or not the request was received by the person receiving the request. It's about whether or not the request was sent directly to that individual. And even if the individual got the request, but it was sent securitously through his lawyer, then the township violated the Freedom of Information Act. But I don't think that's what the Freedom of Information Act requires. In this case, what happened was Ms. Berg was the attorney for the plaintiff, or the appellant in this case, in another case, the April 23rd, that dealt with the April 23rd, 2013 request under the Freedom of Information Act. At that time, the responses to three requests that were dealt with in the separate suits were sent to Ms. Berg. Apparently, she sent them to Mr. Kraft. But I want to be very clear, Ms. Berg wasn't there at the trial, but Mr. Kraft did not testify in that case. He offered no evidence. The only evidence that was offered in this case was zip, zero, none, whatsoever. He did make an argument to the court, but that's not evidence. And he did not argue to the court that he did not receive the responses to the Freedom of Information Act on the last three cases that were dealt with separately. In fact, the only issue involved there was the pleadings, whether or not the pleadings indicated that the Freedom of Information Act was completed. In this case, as Ms. Berg says, she's here to protect her client's ability to receive, as she says, taxpaying citizen is entitled to information under the Freedom of Information Act. There is no evidence in this record that he did not receive it, or that he did not receive it in a timely manner. In fact, the inference is that he did receive it. So what we're here about, as the court has commented, is Mr. Kraft's complaint that somehow or the other this was sent to his lawyer, who then sent it to him. His counsel says, well, you know, I got it, but I didn't represent him. I was worried about privacy. And when the court pointed out that privacy wasn't an issue, then she indicated, well, I still didn't represent him. It might have been a criminal case when it was pointed out that it wasn't a criminal case. The only explanation that was given was that it wasn't sent to him. It was sent to her instead. But he did receive the information. And I don't believe that the Freedom of Information Act is focused on the issue of whether or not something is sent to the individual, but whether or not the individual receives it. Let's look at this. The information was sent to Ms. Berg. There's no dispute about that. If she didn't want it sent to her, she could have responded in a letter and said, hey, you sent this information to me, but I don't represent Mr. Kraft in this case, so please send it to him directly. The reason why it was sent to him was a concern, as pointed out in the brief, about the canons of ethics and having a communication with an individual who is represented by a counsel in a case that you're working on. So the safest avenue there is to send the information to his lawyer. And I think any lawyer that received it there would either send it on to Mr. Kraft, which apparently she did, I don't know, but apparently she did, or to send it back to the sender and say, look, I don't represent this gentleman. I'm not going to send the information on to him. You need to send it to him directly, and you have my permission, even though I represent him in the case. Neither of those things happened in that case. So with respect to the last issue, the last three requests, the issue is, in my view, did he receive it. But the issue to be addressed by the judge was, I've got these pleadings here. You didn't offer me any evidence. You didn't get on the stand and say, I didn't receive it, or it wasn't sent to your lawyer, and she didn't send it to me. All he had to do was simply take the stand and give a short two-minute testimony about what happened. He did not do that. So from the technical viewpoint, what the trial judge was left with was the pleadings. And the pleadings said it was sent to Berg. There is no denial by the plaintiff that he received it. He just denied that it was sent in accordance with the Freedom of Information Act. That's all he denied. So if he received it, what remedy is he going to get? He's already got what he had. He didn't have a lawyer. He's not going to get any legal fees. It doesn't seem like we're here. It's a tempest in a teapot. And my view is that this is compliance with the act by sending it to his lawyer, who apparently then sent it to him. Now, with respect to the first issue in this case, counsel talks about the Freedom of Information request, and she said it was incomplete on its face because it failed to show some things that were requested. First of all, we have these two exhibits, one, two. Three is out. It's not part of the record. But we have exhibits one and two, and the judge said there's no foundation for them, and I can't accept it. But the judge did say, I'll take judicial notice of exhibit number two because it's a copy of a pleading that was filed in this case to support a motion for involuntary dismissal. Now, what did that affidavit say? It said, Ms. Shields said, that I sent, here's a copy. I mean, 87 pages or 100 pages, I'm not sure, but it's a big copy. This copy is attached to this affidavit, and everything that I sent is attached there, and I sent all we had. And then counsel tries to argue that somehow or the other, exhibit three shows that they didn't send anything. Well, there is no exhibit three before this court, and that argument is improper. It shouldn't be made here in this court. But she says one of the things that they failed to send was a complete compensation pack for the trustees. Your Honors, if a clerk from a township receives the Freedom of Information Act, this is exhibit A, and it says, in accordance with the Illinois Freedom of Information Act, I request the following. Number two, complete compensation package for trustees. Is that a request for a document? Is that an interrogatory? Is that something that is maintained? Well, the answer in this record is that Dena Shields said, we sent everything we had in her affidavit. And if you don't look at whether the judge admitted number two or he took judicial notice of number two, she said we sent everything we had. And then, so the question is, is it a Freedom of Information request? The rest of this request asks for copies of things. Number seven is a copy, number six is a copy, number five is a list of all of the employees and their complete compensation package. Dena Shields again said, I sent everything we got. Maybe they didn't have a list, or maybe they didn't have a complete compensation package. But I want to point out that the Freedom of Information Act does not grant a citizen or anybody else the right to send interrogatories to a public body. It gives them a right to ask for documents that they maintain and then they have a duty to send them. Now, with respect to this case, counsel first argued about the burden of proof and then in a reply brief it was indicated that actually the burden of proof is controlled by Section 5-2-1001 of 735 ILCS which basically says that the trial court and the bench trial at the close of the plaintiff's case can weigh the evidence and make a decision. And then the standard of proof for that decision, the standard of review, I'm sorry, is whether or not the trial court abused his or her discretion in the case. In this case, what Judge Broach was confronted with was judicial notice of number 2 and number 2 was number 1. Number 2 was identical to number 1, except that it had the affidavit of Dena Shields attached to it. And what the judge was confronted with was testing was an indication that that was the response and that was everything that the township had. And the four witnesses were called. The appellant was called. He could have testified, I didn't get everything I did, but he didn't testify to that. He didn't testify to anything except he tried to document that exhibit number 1 was in fact a copy of the response to request for protection. And what did he say? He said, I don't know. I can't identify it unless I got the original right here beside this one, and I don't know where the original is. Did I leave it in my office? Have I got it over there? This is a man that came to court ready for trial, and he can't identify the document that he wants to introduce into evidence. Judge Broach was entirely within his rights, but in fact he did not abuse his discretion in denying the introduction of that exhibit because of the foundation alone. But our argument follows down that it doesn't make any difference whether the exhibits were looked at or not looked at. The judge took judicial notice of the response, and he decided after hearing all this evidence, the four witnesses, that in fact the plaintiff hadn't proven his case by a preponderance of evidence, and counsel has not shown in any way, shape, or form that this court should substitute its judgment for the judgment of the trial court because he abused his discretion. In what way did he abuse his discretion? She says no complete compensation package. That's not a request. And Dena Shields said, we sent you everything, Dad. And so if she wanted to ask Dena Shields, did you send the complete compensation package? She had her on the stand. She could have said, we don't have it. She might have said, we don't have a complete compensation package for all the trustees. We don't have any such document. Or she might have said, we do have it, but she didn't ask her the question. And there was no offer of proof in this case to give this court an idea of what was coming down the road. And I will say to the court, counsel didn't say to Judge Broach, there's no argument. Look at the record. There's no argument. Well, there wasn't any compensation package when we were arguing the motion for a directed verdict at the close of the plaintiff's case. That argument wasn't even presented to the trial judge in this case. So I think whenever we looked at this case, we have to conclude that as far as Judge Broach was concerned, he was confronted with a situation where he had one document, he had one witness who said, we gave him everything that we had, Dena Shields, in the affidavit, which he took judicial notice of. And we didn't have Mr. Craft on the stand to testify about that. The only thing he took to stand about was whether or not the document that was marked as Exhibit No. 1 was, in fact, a copy of the original document. He said, I can't tell. I just can't tell. I don't know where the thing is. So I think whenever you look at this information and consider this case, you will find that on the first issue, these documents were, number one, properly denied by Judge Broach. Number two, even if the judge should have admitted one or both of the documents, when you look at the documents, you can't say that he abused his discretion in granting the motion for a directed verdict at the close of the plaintiff's case. And that's the test in this case. It's not, would we have made a different decision? It's, did he abuse his discretion? Because when you look at it, there's no indication that anything was deleted. Now, counsel talks about devious methods and trying to trick Mr. Craft. And she talks about this Exhibit No. 3, which is not before the court. But Exhibit No. 3 came from a separate request under the Freedom of Information Act that Mr. Craft sent 16 days or so before the trial in this case. So there wasn't, there's nothing anything devious about sending the request, or sending the response to the request over to Ms. Berg. It was the canons of ethics require no communication. In this case, apparently she sent them on to Mr. Craft. So I'm confused about where the harm was in this case, whether the Freedom of Information Act requires that or not. So we would suggest to the court that the trial judge was entirely correct in this case, but more importantly, he did not abuse his discretion in granting all three of these, or all four of these motions for a directed verdict at the close of the plaintiff's case. Thank you very much. Thank you, Mr. Petty. Is there any rebuttal? Yes, thank you. With regards to Exhibits 1 and 2, counsel talks about how the court wanted to take judicial notice on Exhibit 2, saying that Deanna Shields not only had it notarized, but signed, said that everything was included as far as responsive documentation, and that her statement that everything, whatever she sent was everything that they had, is something that counsel is saying that the trial court was correct in utilizing to say that, well, we don't need to admit Exhibit 2, we don't need to do anything with Exhibit 2. We're saying that Exhibit 2 should have been admitted, should have been utilized, and because of Exhibit 2, a directed verdict should not have been granted. Just because she says that we gave everything that we have, doesn't mean that that's correct and doesn't mean that the trial court would take that on its face. The documentation within Exhibit 2 shows that, for example, I believe it was Consolidated Communications where it would have a page 1 of 2, or a page 1 of 4, I believe, and wouldn't have the pages after that. It wouldn't have 2 of 2, or 2 of 4, 3 of 4, 4 of 4. So what we were wanting to do was get Exhibit 2 and Exhibit 1, for that matter, admitted, and show just even within those exhibits, to show that they didn't provide all of the documentation that they had records to, or that they had access to. As far as Exhibit 3 goes, our argument is that, at the time when Exhibit 3 was presented, it should have been admitted and it should have been utilized to show, again, that they had access to more documentation that they did not provide. As far as the later FOIA requests, in 2014 that were sent by Mr. Kraft, and counsel saying that, well, there was no abuse of discretion and everything like that, and saying that Mr. Kraft received the documents, he received them eventually, so it's fine. What's the harm if he receives them eventually? We can send them wherever we want as long as at some point in time he gets them. But one of the reasons that the statute is written like this is because if a taxpaying citizen requests documentation, they should be able to get it within a certain period of time. They shouldn't have to wait to receive it, for it to go out of town, to go to their attorney, and then come back to them where they live in another town. They should be able to, within a reasonable amount of time, efficiently have access to this documentation. And I stand by my statement that there is a possibility that the defendant is trying to deter Mr. Kraft and other individuals from making FOIA requests for whatever reason. Perhaps some of the documentation would show that they're doing something they're not supposed to be doing. I don't know. But for whatever reason, the documents, first of all, aren't getting there. They're not being sent out. They're not being sent out in the correct way, which is in violation of the statute. And these people who are making these requests are not getting the information that they're entitled to get. Thank you. Okay. Thanks to both of you. The case is submitted. The court stands in recess.